**In re: GRAND JURY PROCEEDINGS**

**United States of America, Appellee,**

**v.**

**John Doe, Defendant–Appellant.**

**Docket No. 99–6311**

United States Court of Appeals, Second Circuit.

Argued Dec. 13, 1999

Decided July 21, 2000

Mark J. Hulkower, Washington, D.C. (Steptoe & Johnson LLP, of counsel; Reid H. Weingarten, Bruce C. Bishop, on the brief), for appellant.

Alexandra A.E. Shapiro, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, of counsel; Andrea L. Weiss, David D. Finn, on the brief), for appellee.

Before: FEINBERG, CARDAMONE, LEVAL, Circuit Judges.

FEINBERG, Circuit Judge:

This appeal raises significant questions of first impression in this court regarding application of the attorney-client and work-product privileges in the corporate context. The questions are (1) whether a corporate officer can impliedly waive the corporation's attorney-client and work-product privileges in his grand jury testimony, even though the corporation has explicitly refused such a waiver; and if the answer is yes, (2) what factors a district court should consider in deciding whether a waiver has occurred. We hold there can be such a waiver, and discuss below the relevant criteria in deciding its scope.

This case arises out of an ongoing grand jury investigation into allegedly illegal sales of firearms and other contraband by John Doe Corporation (Doe Corp.).[1] Doe Corp. appeals from an order of the United States District Court for the Southern District of New York, Loretta A. Preska, J., entered in October 1999, directing it to produce documents subpoenaed by the grand jury for which Doe Corp. has claimed the attorney-client and work-product privileges. The district court found that statements made by a corporate officer and by in-house counsel to the grand jury waived the corporation's privileges because they unfairly, selectively and deliberately disclosed privileged communications for exculpatory purposes. On appeal, Doe Corp. argues that there was no waiver of either privilege as a result of the grand jury testimony. Further, Doe Corp. argues that even if some of the testimony could be construed as a waiver, the district court erred in failing to narrow the scope of discovery to cover only the disclosed subject matter. For the reasons set forth below, we vacate the order of the district court and remand for further proceedings consistent with this opinion.

## I. Background

Beginning in 1998, Doe Corp. learned that it was involved in facilitating transactions involving the sale of firearms and related items. Consequently, several representatives of Doe Corp. met with officials of the Bureau of Alcohol, Tobacco and Firearms (ATF) to discuss whether Doe Corp. should be concerned about any legal liabilities as a result of these sales. Doe Corp. claims that it was advised by the ATF officials that it need not be concerned about legal liability because of its limited role in the transactions.

Since approximately January 1999, a grand jury in the Southern District of New York has been investigating Doe Corp.'s firearms transactions. In June 1999, the grand jury issued a subpoena in which it formally requested Doe Corp. to waive its

---

1. The appeal concerns proceedings currently before a grand jury. At present, no indictments have been issued. Proceedings before the district court and before this court were held in a closed courtroom, and the record and briefs are under seal. In order to preserve the anonymity of the parties, we will use pseudonyms and will reveal only those facts necessary to our decision.

attorney-client and its work-product privileges and produce "communications with attorneys regarding its policies and practices with regard to the sale ... of firearms." The subpoena required Doe Corp. to produce a privilege log if it elected not to waive the privileges. After several discussions with the government regarding waiver, Doe Corp. decided not to waive its privileges and so notified the government. In July 1999, the government subpoenaed four Doe Corp. employees, including its chief in-house counsel, to testify before the grand jury. In response to the subpoenas, Doe Corp.'s outside counsel contacted the government to discuss the scope of witnesses' testimony in light of Doe Corp.'s refusal to waive its privileges and the likelihood that several areas of inquiry before the grand jury would implicate privileged communication. The government rebuffed Doe Corp.'s offer to engage in proffer sessions, and stated that the witnesses were free to assert the privileges in the grand jury.

## A. The Grand Jury Proceedings

The government contends that Doe Corp. lost its attorney-client and work-product privileges primarily as a result of the grand jury testimony of two Doe Corp. witnesses: its in-house counsel (Counsel), and its founder, chairman and controlling shareholder (Witness). Counsel's testimony before the grand jury concerned the meeting with the ATF officials. The government argues that after recounting in detail what had transpired at that meeting, Counsel refused to turn over his notes of the meeting, improperly invoking the work-product privilege. Counsel claimed that the notes, although taken by his non-lawyer assistant, constitute work-product.

The government's claim of waiver, however, is principally based on Witness's day-long testimony before the grand jury.[2] Witness, like Counsel, was subpoenaed to testify individually, as opposed to being proffered by the corporation as its representative. Witness's own counsel, as well as counsel for Doe Corp., were present outside the grand jury room during his testimony. According to both Doe Corp. and Witness, Witness knew that Doe Corp. had asserted the attorney-client and work-product privileges and that he was not authorized to divulge the contents of any privileged communications during his testimony. Doe Corp. had instructed Witness to invoke the privileges as necessary in the grand jury. Witness was also instructed that he could leave the grand jury room to consult with his attorney during questioning—an option he exercised at least once.

The government points to eight statements in Witness's testimony that, it argues, amount to a waiver of the attorney-client and work-product privileges of Doe Corp. Most of the statements can be characterized as generalized references to counsel's advice, such as "our approach was validated by counsel," "[our control of items for sale was validated] as a result of conversations with counsel," "everything I heard from counsel before the ATF meeting, everything afterwards ... supports the fact that we are not legally responsible." A number of the statements, however, were more specific: one concerns counsel's recommendation about the use of credit cards as identification tools, another concerns counsel's advice about whether the company should monitor individual sales, and yet another refers to a report prepared by in-house counsel supporting the continuation of Doe Corp.'s current practices. Doe Corp. argues that the government is using at least some of these statements out of context, and that, in

2. Although we are told that Witness's testimony fills more than 150 pages of transcript, the record contains only seven pages of his heavily redacted testimony. The record indicates that the government offered to make the complete and unredacted transcript available to the district court for in camera review, but that such a copy was never requested by the court. We have therefore confined ourselves to the portions of the transcript actually provided to the court below.

some instances, Witness had no choice but to refer to his counsel's advice in order to provide a complete answer. The government responds that its questions were not improper and were not calculated to "trick" Witness into disclosing privileged information. Indeed, one question by the government directed Witness to avoid discussing counsel's advice, yet he referred to counsel in his answer to that question. The parties agree that on several other occasions Witness did invoke the attorney-client privilege.

## B. The District Court Proceedings

Two months after Witness's grand jury testimony, the government moved to compel production of all of Doe Corp.'s withheld documents, to bar the company from asserting the attorney-client or work-product privileges as to any document that bears on the grand jury investigation, and to require Doe Corp. to respond to any questions previously unanswered on the ground of privilege. The government argued that because Witness repeatedly referred to advice of counsel in attempting to justify Doe Corp.'s actions to the grand jury, fairness demanded full disclosure of that advice. Additionally, the government submitted ex parte an affidavit setting forth its need for Doe Corp.'s work-product material.

Doe Corp. responded with a number of arguments. First, neither Witness nor Counsel could waive Doe Corp.'s privileges without its authorization. Second, there was no implied waiver of the attorney-client privilege because the corporation did not raise an advice-of-counsel defense, nor did it take any other affirmative steps that would support a finding of waiver. Third, even if some disclosure of privileged communications took place, the district court should limit the disclosure to cover only the narrow subject matter covered in the Witness's testimony. Finally, the work-product privilege was not waived and the government had not shown compelling need justifying disclosure of work-product.

Ruling from the bench, the district court held with regard to the corporation's attorney-client privilege that "[u]nder the facts of this case ... there has been a selective disclosure of the substance of the attorney's advice by the chairman, founder and CEO of the company in his grand jury testimony in an exculpatory manner, and accordingly, ... such action waive[d] the privilege." The court found that Witness had volunteered privileged information even when the question did not call for it. Further, the court rejected Doe Corp.'s argument that a more formal waiver was necessary. The judge noted that,

> the issue of privilege was known prior to this witness'[s] testimony. His personal counsel and counsel for the company were present outside the grand jury room if he wished to consult with them, and certainly the tenor of the testimony indicates that the waiver and the disclosure [were] intentional.

As a result of the exculpatory manner in which Witness referred to counsel's advice, the court, relying on *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991), held that fairness required waiver of the privilege.

With regard to Doe Corp.'s work-product privilege, the court ruled that it too was waived "for reasons of fairness." The court also relied on the government's ex parte affirmation, which explained its need for "exceedingly relevant" material that it could not otherwise obtain. The judge also denied Doe Corp.'s request to limit the scope of the disclosure on the ground that Witness never saw or had access to many work-product items. Ruling on the scope of the work-product disclosure, the judge stated, "I do not think that [Witness's] access is the controlling fact in this instance. Given his reliance on counsel's advice in general, it seems to me that all of the communications on the topics at issue ... must be disclosed...."

In October 1999, the district court granted the government's motion to com-

pel discovery but (by stipulation of the parties) stayed the order pending the outcome of this appeal.[3]

## II. Discussion

### A. Standard of Review

 It is firmly established in this circuit that we review a district court's finding of waiver of the attorney-client and work-product privileges for abuse of discretion. *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir.1995); *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992); *Bilzerian*, 926 F.2d at 1293. Of course, "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); see also *Adlman*, 68 F.3d at 1502 (remanding to district court because it used the wrong legal standard to determine existence of work-product privilege). The question whether a corporate officer in the grand jury context can impliedly waive the corporation's privilege as to communications with the corporation's counsel is a question of law that we review de novo. Cf. *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir.1997) (Teamsters).

### B. Waiver of the Attorney–Client Privilege

We turn first to the district court's ruling that Witness's testimony before the grand jury impliedly waived Doe Corp.'s attorney-client privilege. For purposes of this appeal, the parties do not dispute that the attorney-client privilege attaches to the communications that the government seeks to discover. The dispute centers only on the question of waiver.

#### 1. Implied Waiver: Governing Principles

 It is well settled that "[t]he burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *Id.* at 214. The administration of the privilege in the courts requires recognition that "'sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.'" *In re von Bulow*, 828 F.2d 94, 100 (2d Cir.1987) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). But since the privilege "stands in derogation of the public's 'right to every man's evidence, ... it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *Teamsters*, 119 F.3d at 214 (quoting *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.1973)). "An uncertain privilege—or one which purports to be certain, but results in widely varying applications by the courts—is little better than no privilege." *In re von Bulow*, 828 F.2d at 100.

 This court has recognized that implied waiver may be found where the privilege holder "asserts a claim that *in fairness* requires examination of protected communications." *Bilzerian*, 926 F.2d at 1292 (emphasis supplied). We have stated in *In re von Bulow*, 828 F.2d at 103, and in *Bilzerian*, 926 F.2d at 1292, that fairness considerations arise when the party attempts to use the privilege both as "a shield and a sword." In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party. See *Hearn v. Rhay*, 68 F.R.D. 574, 581–83 (E.D.Wash.1975) (cited with approval in *Bilzerian*, 926 F.2d at 1292). "The quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to

---

**3.** We have jurisdiction under 28 U.S.C. § 1291. See *In re Katz*, 623 F.2d 122, 124–25 (2d Cir.1980) (holder of asserted privilege may appeal when subpoena is directed at a third party because of the risk that the third party will surrender the privilege rather than risk a contempt citation).

have waived his privilege with respect to the advice that he received." *In re Kidder Peabody Secs. Litig.,* 168 F.R.D. 459, 470 (S.D.N.Y.1996); see also *Bilzerian,* 926 F.2d at 1292; *Joy v. North,* 692 F.2d 880, 893–94 (2d Cir.1982); *United States v. Exxon Corp.,* 94 F.R.D. 246, 248–49 (D.D.C.1981).

 Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted. Thus, in *Bilzerian,* 926 F.2d at 1292–93, we held that a defendant who intended to testify as to his "good faith" reliance on legal advice could not prevent the government from cross-examining him on advice received from counsel. Because the defendant raised the advice-of-counsel defense and sought to rely on privileged information in a judicial setting, the court found that if defendant so testified a broad waiver would be appropriate.[4] *Id.* at 1292 (citing *Exxon,* 94 F.R.D. at 249). By contrast, the D.C. Circuit declined to find a waiver when defendant testified at trial that he lacked the intent to commit the crime because, after meeting with his lawyers, he believed that his actions were lawful. *United States v. White,* 887 F.2d 267, 270–71 (D.C.Cir.1989) (Ginsburg, J.). The *White* court, citing our decision in *In re von Bulow,* 828 F.2d at 101–02, concluded that mere denial of mens rea through "[a]n averment that lawyers have looked into a matter does not imply an intent to reveal the substance of the lawyers' advice. Where a defendant neither reveals substantive information, nor prejudices the government's case, nor misleads a court by relying on an incomplete disclosure, fairness and consistency do not require the inference of waiver." 887 F.2d at 271.

 We have also recognized that a more limited form of implied waiver may be appropriate where disclosure occurred in a context that did not greatly prejudice the other party in the litigation. Thus, in *In re von Bulow,* 828 F.2d at 102–03, we limited the scope of the waiver to only those communications already revealed to the public because the context of the disclosure—publication of a tell-all book about the high-profile defense of Claus von Bulow—was extrajudicial. The scope of waiver has also been limited where "the disclosure occurred early in the proceedings, was made to opposing counsel rather than to the court, and was not demonstrably prejudicial to [the] other party." *Id.* at 103 (citing *Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 25 (9th Cir.1981)). Further, when waiver occurs as a result of inadvertent document disclosure, courts have limited the scope of that waiver based on the circumstances involved and overall fairness. See, e.g., *United States v. Gangi,* 1 F.Supp.2d 256, 264 (S.D.N.Y.1998) (describing flexible, "middle of the road," approach).

The general rules governing waiver are more complicated when the issue arises in the context of corporate entities. The Supreme Court noted in *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), that the attorney-client privilege presents "special problems" in the corporate context:

> As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation.

*Id.* at 348, 105 S.Ct. 1986. In *Weintraub,* the Court recognized that ordinarily the

---

4. This type of waiver is also known as subject-matter waiver. As explained in Wigmore, "[t]he client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter." 8 J. Wigmore, Evidence § 2327, at 638 (McNaughton ed., 1961).

authority to assert and waive the corporation's privileges "rests with the corporation's management and is normally exercised by its officers and directors." *Id.* Since *Weintraub,* courts have found that a corporate employee or officer could not assert the attorney-client privilege when the corporation has already waived the privilege. In *Teamsters,* we surveyed the law on this issue and concluded that employees or officers of the corporation "generally may not prevent a corporation from waiving the attorney-client privilege arising from ... communications [between the corporation's counsel and officers of the corporation]." 119 F.3d at 215 (and cases cited therein); *In re Bevill,* 805 F.2d 120, 124 (3rd Cir.1986).

 *Weintraub* and *Teamsters* involved explicit waivers of the attorney-client privilege by the corporation. Neither one addressed the situation in this case, where the corporation has asserted its privilege in its communications to the government and the court and yet one of its officers arguably waived that privilege before a grand jury. The cases on which the government relies to support application of the implied waiver doctrine to corporations are, for the most part, quite distinguishable from the case at hand. For instance, in *In re Sealed Case,* 29 F.3d 715, 717–18 (D.C.Cir.1994), the court held that voluntary disclosure during a plea proffer could result in waiver. Similarly, in *In re Martin Marietta Corp.,* 856 F.2d 619, 623–25 (4th Cir.1988), the court found that voluntary disclosure to the government during settlement negotiations resulted in waiver. Disclosures made to the Securities and Exchange Commission (SEC) in the context of its voluntary disclosure program have also been held to result in waiver. See, e.g., *In re Sealed Case,* 676 F.2d 793, 824 (D.C.Cir.1982). Finally, where a corporation has disseminated information to the public that reveals parts of privileged communications or relies on privileged reports, courts have found the privilege waived. See, e.g., *In re John Doe Corp.,* 675 F.2d 482, 488–89

(2d Cir.1982); *Granite Partners, L.P. v. Bear Stearns & Co.,* 184 F.R.D. 49, 53–55 (S.D.N.Y.1999) (published report relied on privileged information); *In re Kidder Peabody Secs. Litig.,* 168 F.R.D. at 469–73. In each case, the corporation waiving the privilege made a deliberate decision to disclose privileged materials in a forum where disclosure was voluntary and calculated to benefit the disclosing party. Clearly, when the corporation as an entity makes the strategic decision to disclose some privileged information, the courts may find implied waiver, as they do in cases involving individuals.

### 2. Application

In this case, application of the general rules governing implied waiver of the attorney-client privilege in the corporate context is complicated by a number of factors that we discuss below. Primarily, this is because we have here a corporation that has asserted its privilege, has not deliberately disclosed (so far as the record before us indicates) any privileged material to the government or to other parties, but whose officer, in contravention of the corporation's instructions, has arguably waived that privilege in his grand jury testimony. In light of the district court's finding of blanket waiver of Doe Corp.'s privileges, we are concerned that the court might not have fully appreciated the significance of this specific context for the waiver analysis.

### a. *The Corporate–Agent Dichotomy*

 In finding that Witness's testimony before the grand jury waived the corporation's privilege, the district court relied on the uncontroversial proposition that "a corporation must act through [its] agents." *Weintraub,* 471 U.S. at 348, 105 S.Ct. 1986. While it is true, as *Weintraub* held, that when a corporation decides to waive the privilege its officers or counsel must communicate this decision, it does not necessarily follow that a corporate officer testi-

fying in his *individual* capacity can waive the corporate privilege without that entity's consent. Indeed, in the reverse situation—that is, where a corporation waives its privilege but an officer wishes to assert that privilege as to his communications with corporate counsel—we have held that the privilege belongs to the corporation, not to the agent. See *Teamsters,* 119 F.3d at 215.

■ As already indicated, we believe that the implied waiver analysis should be guided primarily by fairness principles. Doe Corp. urges us to adopt a per se rule that a corporate officer's waiver in testimony before the grand jury should not be attributed to the corporation when it has asserted its privilege and has not otherwise lost it. The government argues for the reverse per se rule: that because of Witness's prominent position in the corporation—he is the founder, CEO, and controlling shareholder—his waiver *must* be, for all intents and purposes, the corporation's waiver. Since fairness depends on context, we believe it is not prudent to formulate a per se rule in this area of the law. Cf. *Upjohn,* 449 U.S. at 396, 101 S.Ct. 677 (opting for a case-by-case approach); *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 236 (2d Cir.1993). It is true that either proposed rule would have the benefit of predictability. But Doe Corp.'s per se rule would likely fail to anticipate circumstances where disclosures by a corporate agent in the grand jury would, in fairness, require a finding of waiver by the corporation. Similarly, the government's proposed rule could operate too harshly and bring about an unfair result for the target of the investigation.

■ Here, Witness was subpoenaed individually. Although Witness was called to the grand jury because he was a Doe Corp. officer, his testimony in the grand jury was not affirmatively offered by Doe Corp. on its own behalf. Doe Corp. is a publicly held corporation; it has a board of directors, numerous shareholders, and a large number of employees. It is far from being Witness's "alter-ego." It is true that Witness and Doe Corp. share many of the same interests: an indictment of Doe Corp. would likely harm Witness's financial prospects, not to mention his reputation. However, even if we accept the government's position that Witness's reference to advice-of-counsel was self-interested, it does not necessarily follow that, as a result, the corporation itself should be penalized.[5] While it may be that Witness intended to abide by Doe Corp.'s decision not to waive its attorney-client privilege, the corporation had no direct means of controlling Witness's testimony while he was in the grand jury room.[6] At oral argument, Doe Corp. made the significant suggestion that Witness's interest in exculpating his own conduct may override his fidelity to the corporation, including its interest in preserving the privilege. We believe the district court should consider this possibility.

We recognize that other courts have attributed to the corporation an implied waiver of the attorney-client privilege as a result of testimony by a corporate officer. For instance, in *Velsicol Chemical Corp. v. Parsons,* 561 F.2d 671, 675 (7th Cir.1977), the Seventh Circuit held that in-house counsel for the corporation under investigation waived, in his grand jury testimony, the corporation's attorney-client privilege as to conversations with outside counsel even though the corporation had not authorized him to do so. Without passing on the merits of *Velsicol,* which is of course

---

5. For instance, in *In re Sealed Case,* 877 F.2d 976, 978, 982 (D.C.Cir.1989), the court appeared to accept the position of the government and of defendant that work-product documents released to the government by one of the corporation's officers, as part of an immunity deal for that officer, did not thereby strip the corporation of its claim of privilege over those documents.

6. Witness was accompanied by individual and corporate counsel to the grand jury. However, they were required to wait outside the grand jury room.

not controlling on us, we find it distinguishable from the situation here in some crucial respects. In *Velsicol,* the Seventh Circuit held that the waiver "cannot be characterized as inadvertent." *Id.* at 675. Unlike the witness in *Velsicol,* Witness was not the corporation's legal representative, had no legal training, and was not directly involved in preparing the corporation's defense. Further, unlike the corporation in *Velsicol,* Doe Corp. has formally notified the government of its intention to preserve the privilege. Cf. *id.* While it may be entirely appropriate to hold the corporation responsible for its counsel's statements in the grand jury, fairness considerations may support a different result when the witness is uncounseled and has no legal training. Similarly, in *Weil v. Investment/Indicators, Research and Management, Inc.,* 647 F.2d 18, 23–25 (9th Cir.1981), the court held that waiver by an officer of the corporation during his deposition testimony could be attributed to the corporation. Notably, *Weil* was a civil case so neither the officer nor the company faced criminal penalties. Further, the court in *Weil* noted that counsel for the corporation was present during the officer's deposition but did not object to the disclosure. See *id.* at 23, 25 n. 13.[7]

While these cases can illustrate that, in some circumstances, a corporation may impliedly waive its privilege through the testimony of one of its officers, they hardly stand for the proposition that this must always be the case. Rather, as we have already noted, the district court should carefully weigh the circumstances surrounding Witness's testimony in deciding whether, in fairness, that testimony effected waiver of Doe Corp.'s privilege.

### b. The Grand Jury Context

We are mindful of the policy that "[n]owhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena." *In re Sealed Case,* 676 F.2d at 806 (citing *Branzburg v. Hayes,* 408 U.S. 665, 688 & n. 26, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). Yet, insofar as implied waiver encroaches upon well recognized and "firmly anchored" common law privileges, it should not be applied cavalierly. As we noted in *Bilzerian,* 926 F.2d at 1292, "[o]ften the importance of the interests promoted by the privilege justify the exclusion of otherwise relevant evidence."

In the situation before us, Witness was compelled to appear and to testify before the grand jury. Because the corporation does not enjoy the protection of the Fifth Amendment, Witness could not assert the Fifth Amendment on its behalf. *Braswell v. United States,* 487 U.S. 99, 102, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). Consequently, Witness's alleged waiver occurred in the context of purely compelled testimony.[8]

In that sense, the "shield and sword" analogy used by the government to justify waiver may be inappropriate. Unlike the defendant in *Bilzerian,* 926 F.2d at 1293, who sought to testify at trial about advice-of-counsel and prevent the government from cross-examining him about it, the defendant in *Exxon,* 94 F.R.D. at 247, who "interpos[ed] the affirmative defense of good faith reliance" on the government in its answer to the government's interrogatories, or the defendant in *United States v. Nobles,* 422 U.S. 225, 239–40, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), who elected to call his investigator as witness but shield the latter's report from the government,

7. The court in *Weil* also based its finding of waiver on the inadvertent disclosure of a document by the corporation's counsel. *Id.* at 23–25. We note, however, that the alleged waiver in this case is based upon testimony, not document production.

8. Doe Corp. states that Witness is not the subject of the grand jury investigation and that there is no suggestion that he could be exposed to individual criminal liability. If that is so, as to which we express no opinion, then it is also likely that Witness could not assert his individual Fifth Amendment right against self-incrimination.

Doe Corp. did not *itself* take any affirmative steps to inject privileged materials into the litigation or to otherwise explicitly raise the advice-of-counsel defense. As noted above, supra at 184, the voluntary disclosure cases are similarly distinguishable as they involve a decision by the corporation that it will forgo "some of the traditional protections of the adversary system in order to avoid some of the traditional burdens that accompany adversary resolution of disputes." *In re Sealed Case,* 676 F.2d at 822–23. By contrast, Doe Corp. has not disclosed privileged materials to the government in any other context. In fact, in its correspondence with the government, Doe Corp. stated explicitly that it was asserting its privileges.

 On the other hand, it is true that Witness might have invoked Doe Corp.'s attorney-client privilege. As discussed below, infra at 187–88, the inquiry into whether Witness purposefully chose not to assert the privilege when it was appropriate to do so is relevant to the waiver analysis. An element of that inquiry is that Witness's testimony in the grand jury was unaided by counsel. We recognize that Witness was not entitled to counsel in the grand jury room. *United States v. Mandujano,* 425 U.S. 564, 581, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (plurality). Yet, insofar as the waiver analysis is premised on fairness considerations, that the waiver took place in the context of uncounseled testimony in the grand jury room is relevant to the analysis.

The government relies on *United States v. Plache,* 913 F.2d 1375, 1380 (9th Cir. 1990), to support the district court's finding of implied waiver based on grand jury testimony. In that case, the Ninth Circuit found that defendant raised reliance on advice of counsel in his grand jury testimony and thereby waived his own privilege as to the subject matter of that advice. *Id.* However, *Plache* involved a claim of privilege by an individual, not a·corporation. Thus, Plache could have invoked his individual Fifth Amendment right in response to questions. Also, unlike Witness who was subpoenaed, Plache chose to appear before the grand jury, and the penalty for his missteps was imposed upon him, not upon another entity as would be the result here. Cf. *Velsicol,* 561 F.2d at 674–76.

The foregoing discussion suggests that the district court should at least consider further its conclusion that the answers of Witness when under subpoena constituted Doe Corp.'s use of the attorney's advice as a sword.

### c. The Nature of the Disclosure

The government argues that Witness's disclosures in the grand jury were not inadvertent but rather a calculated and deliberate attempt to exculpate the corporation. Doe Corp. responds that the disclosures were inadvertent, that they were taken out of context, and that at most they would support a limited waiver.

 The present record reveals that on several occasions Witness referred generally to the fact that he consulted with counsel and that this led him to believe Doe Corp.'s business practices were lawful. For instance, Witness testified that "everything that I have heard from counsel ... ·supports the fact that we are not legally responsible." Doe Corp. argues that these general statements, taken in the context of Witness's grand jury testimony as a whole, did not amount to an assertion of advice-of-counsel defense. Relying on *White,* Doe Corp. argues that Witness's statements were nothing more than "[a]n averment that lawyers have looked into·a matter" and thus do "not imply an intent to reveal the substance of the lawyers' advice." 887 F.2d at 271. Consequently, "fairness and consistency do not require the inference of waiver." *Id.* The truncated record before us also reveals, however, that on at least three occasions during his grand jury testimony, Witness testified about specific legal advice the corporation received. First, the Witness referred to advice concerning the use of credit cards.

The second disclosure concerned a report by in-house counsel that Witness stated "did not indicate that we needed to change any of our behavior." The third disclosure concerned Doe Corp.'s monitoring of certain transactions. Although the question did not call for counsel's advice, Witness responded that, "to [his] knowledge," the decision not to monitor the transactions was based on "advice from counsel ... that that was in fact the correct course of action."

As indicated above, see supra n. 2, the district court did not examine the unredacted testimony of Witness. The transcript produced by the government is so heavily redacted, that we cannot decide whether these statements can fairly be said to constitute waiver of Doe Corp.'s attorney-client and work-product privileges. For example, in some instances, we do not know what questions were asked of Witness, whether the government pressed him as to his reasons for believing that Doe Corp.'s conduct was lawful,[9] or whether he was simply inept at walking the fine line that would allow him to answer the government's questions truthfully and still preserve Doe Corp.'s privilege.

■ More specifically, on the basis of this limited record we are reluctant to evaluate the district court's conclusion that Witness's alleged waiver was purposeful rather than inadvertent. It is true that "[w]aiver may take place even if the disclosing party does not 'intentionally relinquish[ ] a known right,'" *In re Kidder Peabody*, 168 F.R.D. at 468 (quoting 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 511[02], at 511–6 to –7 & nn. 14–16 (1990)); see also *In re Sealed Case*, 877 F.2d at 980. However, this does not mean that all inadvertent disclosures mandate a finding of waiver. See, e.g., *SEC v. Cassano*, 189 F.R.D. 83, 85 (S.D.N.Y.1999) (discussing factors relevant to finding waiver as a result of inadvertent disclosure); *Gangi*, 1 F.Supp.2d at 264 (adopting "flexible" approach in cases of inadvertence). We note that most of the cases on which the government relies for the proposition that inadvertent disclosures of privileged materials justify waiver involve carelessness in the document production process, see, e.g., *Weil*, 647 F.2d at 23–25; *Cassano*, 189 F.R.D. at 85–86, and are not therefore directly analogous to this case. See *id.* (describing the mechanics of document production).

■ Because the waiver inquiry depends heavily on the factual context in which the privilege was allegedly waived, we leave it to the district court, on remand, to determine which—if any—of Witness's statements amount to waiver, and its appropriate scope.[10] More importantly, the issue is not whether the reference to the attorney's advice was a deliberate attempt at exculpation, but rather whether it was a deliberate attempt *on the part of the corporation* to exculpate itself, as opposed to Witness's effort to exculpate himself personally.

#### d. Prejudice to the Government

■ Finally, as the animating principle behind waiver is fairness to the parties, if the court finds that the privilege was waived, then the waiver should be tailored to remedy the prejudice to the government. The district court granted the government the full disclosure of Doe Corp.'s attorney-client communications and work-product material that it had requested: "all materials previously withheld on grounds of ... privilege; ... any document that bears on the Grand Jury's investigation; ... and [answers to] questions previously unanswered on privilege grounds that implicates these subjects."

---

9. Cf. *Mandujano*, 425 U.S. at 581, 96 S.Ct. 1768 (plurality) (when the grand jury witness asserts privilege, questioning on that subject should cease).

10. In doing so, the court should review a complete and unredacted transcript of Witness's day-long grand jury testimony.

On this truncated record, we are not persuaded that the government has been prejudiced—especially to a degree that would justify the broad disclosure ordered by the court. First, as explained above, we do not believe that the "shield and sword" analogy neatly applies to the grand jury testimony. The grand jury is seldom portrayed as a "sword" for the defendant or the testifying witness. It is an accusatory body under the (almost) complete control of the prosecutor. *United States v. Williams*, 504 U.S. 36, 51, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (courts exercise only limited control over grand juries). Second, unlike exculpatory testimony at trial that could result in a permanent acquittal or have other res judicata effect, a no true bill from the grand jury might grant Doe Corp. only temporary relief. The government can usually choose to impanel another grand jury. It need not even recall witnesses; but can simply present selected transcripts to the second grand jury. Alternatively, the government could ask the district court to instruct the grand jury that Witness's mention of the advice of corporate counsel should not be considered on the issue of voting an indictment against Doe Corp. We agree that there can be unfairness to the government as a result of manipulative testimony before the grand jury; we note only that the gain to the subject of the investigation is limited. Third, as the government noted in its brief, the grand jury is separate from the courts, and is not restrained by many of the procedural and evidentiary rules that govern the conduct of criminal trials. Because of the secret and independent status of the grand jury, it bears some similarities to the "extrajudicial" context described in *In re von Bulow*, 828 F.2d at 102–03. In that case, we held that "extrajudicial" disclosures of privileged information result only in waiver of the communications revealed, but not of related communications. Without deciding whether limiting the scope of the waiver in this fashion is warranted, we note that it is an option open to the district court in assessing prejudice to the government. Finally, it is significant that this disclosure took place early in the grand jury proceedings. Cf. *Weil*, 647 F.2d at 25. Witness was only the fourth to appear before the grand jury. It may well be that the government has other witnesses and other evidence to present.

In sum, we believe that sound judicial administration suggests that we remand this matter to the district court for reconsideration in view of the factors discussed above. The transcript of the grand jury proceedings presented to us is so truncated and peppered with deletions, we cannot be certain that we have a full picture of all the circumstances that may bear on the decision. To the extent, however, that the relevant circumstances are apparent to us on the appellate record, they seem to us to suggest that it would be unfair to impute a waiver to Doe Corp. on the basis of Witness's mention of his reliance on the advice received from Doe Corp.'s attorneys. We base that observation on the following factors: First, Witness was subpoenaed *in his individual capacity* to appear before the grand jury. He was not subpoenaed as a representative of Doe Corp. much less proffered by Doe Corp. as its representative. Second, even if it could reasonably be found that Witness used corporate counsel's advice as a sword, that would not necessarily justify the finding that *Doe Corp.* used the advice of counsel as a sword. Witness's grand jury testimony was perhaps motivated by his desire to justify his own actions and to fend off implications of criminality *on his own part*. The corporation's representatives were excluded from the grand jury room when Witness was testifying, so it had no sure way of knowing what Witness said in the course of his testimony, much less controlling it or protecting itself against involuntary waiver. Third, Doe Corp. had made unmistakably clear its insistence on preserving its attorney-client privilege. Fourth, we can discern no prejudice to the government in

deeming Doe Corp.'s privilege to remain intact. These circumstances viewed in isolation suggest to us it would be unfair to find, on the basis of Witness's testimony, that Doe Corp. had waived its entitlement to preserve the confidentiality of its communications with its attorneys. It may be, however, that the full record of the proceedings would reveal equally powerful, or more powerful, circumstances arguing in favor of waiver. If the district court concludes that waiver is appropriate, then it must decide what is the proper scope of the waiver. On that point, we note that "subject matter can be defined narrowly or broadly." *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255 (6th Cir.1996); see also *In re Sealed Case*, 877 F.2d at 981. We leave it to the district court, in the first instance, to define the subject matter of the waiver.

### C. Waiver of the Work–Product Privilege

We turn now to Doe Corp.'s contention that the district court erred in finding that the testimony of Witness and Counsel resulted in a broad waiver of Doe Corp.'s work-product privilege. As with the claim concerning waiver of the attorney-client privilege, the parties contest only the issue of waiver.[11] As an initial matter, we note that the district court did not make any particularized findings in support of this part of its holding. The court simply concluded that fairness demanded full disclosure of *all* the work-product materials requested by the government, including "pure attorney opinion work-product." The court also stated that it relied on the "sealed ex parte affirmation" by the government as an alternative basis for this ruling.

### 1. Governing Principles

 The Supreme Court has frequently reiterated the strong public policies underlying the work-product privilege. In *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the Court found that the work-product doctrine provided the lawyer with an essential zone of privacy, where the lawyer could work "free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510–11, 67 S.Ct. 385. The Court cautioned that in the absence of this privilege, "much of what is now put down in writing would remain unwritten," and that the "effect on the legal profession would be demoralizing." *Id.* at 510, 67 S.Ct. 385. Further, the Court has recognized both in *Hickman*, 329 U.S. at 508, 67 S.Ct. 385, and again in *Nobles*, that "the work-product doctrine is distinct from and broader than the attorney-client privilege." 422 U.S. at 238 & n. 11, 95 S.Ct. 2160. In *Nobles*, the Court applied the work-product doctrine to criminal proceedings noting that:

> Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.

*Id.* at 238, 95 S.Ct. 2160. A party seeking discovery of attorney work-product must show "substantial need," for fact work-product. As for work-product that shows "mental impressions, conclusions, opinions, or legal theories of an attorney," Fed. R.Civ.P. 26(b)(3), we have held that, "at a minimum such material is to be protected unless a highly persuasive showing [of need] is made." *Adlman*, 134 F.3d at

---

11. On appeal, the government argues that at least one of the items to be disclosed, notes taken by Counsel's assistant at the ATF meeting, is not covered by the work-product privilege. That issue was not ruled upon below and we do not reach it here. The government on remand is free to challenge the applicability of both the attorney-client and the work-product privileges to items on Doe Corp.'s privilege log.

1204; see also *Upjohn,* 449 U.S. at 401–02, 101 S.Ct. 677; Cf. *Martin Marietta Corp.,* 856 F.2d at 626 (generally opinion work-product not discoverable).

### 2. Application

For largely the same reasons we outlined above, we believe that the district court on remand should consider further whether there was any waiver of Doe Corp.'s work-product privilege, and, if there was, the proper scope of the waiver. The fairness concerns that guide the waiver analysis above are equally compelling in this context.

▇▇▇ The government, relying on *Nobles,* argues that because Witness testified about subjects on which Doe Corp.'s counsel prepared reports or letters, Doe Corp. "put at issue" its counsel's legal opinion and therefore necessarily waived the work-product privilege. We do not agree. First, the government overlooks the potential difficulties of attributing Witness's grand jury testimony to Doe Corp. See supra at 185. Second, we do not find that *Nobles* supports the government's definition of "put at issue." The *Nobles* court found that defendant waived the work-product privilege as to reports compiled by a defense investigator when the defense called that investigator to testify. The Court stated that:

> by electing to present the investigator as a witness, [defendant] waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

422 U.S. at 239–40, 95 S.Ct. 2160. As this passage demonstrates, the Court in *Nobles* found it crucial that the defense elected to make affirmative use of the report and then shield it from scrutiny. Certainly, the defendant in *Nobles* did not have to call his investigator as a witness or ask him about his report. By contrast, Witness here was not proffered by Doe Corp., but was compelled to testify before the grand jury. He was answering the government's questions, not putting up his own defense. This was also true of Counsel's testimony. We find it difficult, on the basis of this record, to conclude that Counsel waived the privilege as to his assistant's notes (assuming they are privileged), simply by answering the government's questions about the ATF meeting. The ATF meeting was not privileged in itself and, therefore, it is at least not obvious to us that telling the government about it thereby waived the claim of privilege as to the notes.

In the other cases relied on by the government, the court found waiver of work-product where there was deliberate, affirmative and selective use of privileged work-product materials by a party. In *Steinhardt Partners,* 9 F.3d at 234, we emphasized that voluntary (as opposed to compelled) disclosure of documents to the SEC waived the company's work-product privilege as to other parties. In *Martin Marietta Corp.,* the Fourth Circuit held that the corporation made testimonial use of privileged documents when it disclosed them to the government during settlement negotiations. Once disclosed, the court found that Martin Marietta "impliedly waived the work-product privilege as to all non-opinion work-product on the same subject matter as that disclosed." 856 F.2d at 625; see also *In re Sealed Case,* 676 F.2d at 817 (voluntary disclosure to the SEC). In this case, however, there was no actual disclosure of any privileged documents. Further, the context—a grand jury proceeding—is, as already indicated, quite different from settlement negotiations or voluntary disclosure programs where the company, initially at least, stands to benefit directly from disclosing privileged materials.

■ Moreover, assuming that waiver of some work-product privilege is found, on remand the district court should make particularized findings explaining the connection between the testimony of Witness or Counsel and the materials that are to be disclosed. See, e.g., *Nobles*, 422 U.S. at 240, 95 S.Ct. 2160 (waiver was properly limited "only [to] the portion of the report that related to the testimony the investigator would offer"); *In re Sealed Case*, 877 F.2d at 981. In declining to limit discovery, the district court here stated that it did not consider relevant that Witness may not have been aware of certain privileged documents. Yet, we have previously stated that work-product not communicated to the client remains shielded. *Joy*, 692 F.2d at 893–94; see also *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir.1994). It is true that Doe Corp. is the client and the work-product was presumably communicated to someone in Doe Corp.'s employ, e.g., Counsel. But the logic behind our holding in *Joy* seems to suggest that insofar as the government relies on *Witness's testimony* as the basis of the waiver, a court might reasonably conclude that Witness could waive only as to documents that could have informed his testimony.

### 3. Ex Parte Affidavit

As noted above, work-product will not be disclosed absent a showing of "substantial need," in the case of fact work-product, or "at a minimum ... a highly persuasive showing [of need]" in the case of opinion work-product. *Adlman*, 134 F.3d at 1204 (suggesting that "necessity and unavailability by other means," may not ever be sufficient to support disclosure of opinion work-product). The government relies on its ex parte affidavit in support of its argument of exceptional need. Doe Corp. argues that the district court's reliance on the ex parte affidavit in support of its finding of waiver was fundamentally unfair.

■ Because we find that the district court must reconsider its conclusion that Witness's grand jury testimony necessarily justified the broad waiver of Doe Corp.'s work-product privilege, we need not decide whether the district court improperly relied on the government's affidavit. We note that while the affidavit may demonstrate the government's need for certain materials, it is not clear that the government has exhausted other means of obtaining the relevant information it seeks. For instance, the government has called only four witnesses to the grand jury. "While it would probably be more convenient for the Government to secure the ... [information it seeks] by simply subpoenaing the ... notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney-client" and work-product privileges. *Upjohn*, 449 U.S. at 396, 101 S.Ct. 677. Thus, on remand the government must explain to the district court why it cannot obtain the information it seeks through other witnesses.

Conclusion

We vacate the order of the district court and remand so that it may consider further, in light of this opinion, the issues of waiver of Doe Corp.'s attorney-client and work-product privileges.