**George DALE et al.**

v.

**Martin FRANKEL et al.**

**No. 3:01 MC 5(EBB).**

United States District Court, D. Connecticut.

Aug. 28, 2001.

Douglas S. Skalka, Neubert, Pepe & Monteith, New Haven, CT, for plaintiff.

William M. Bloss, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, for movant.

## RULING ON PENDING DISCOVERY MOTIONS

BURNS, District Judge.

On January 3, 2001, non-party Mark C. Durkin filed a Motion to Quash Subpoena for Production served upon·him with respect to an action pending in the United States District Court for the Southern District of Mississippi, entitled *George Dale v. Martin Frankel,* No. 3:00 CV 359 LN ["Mississippi Action"], and his brief in support. (Dkts.## 1–2).[1] Attorney Durkin has represented some of Frankel's corporations in Connecticut. Eighteen days later, plaintiffs filed their brief in opposition. (Dkt.# 3).[2] Durkin filed his reply brief on

---

1. Two exhibits were attached to the brief (Dkt.# 2): copy of the Subpoena, dated December 7, 2000 (Exh. 1); and copy of a letter

from Durkin's counsel, dated December 22, 2000, with affidavit attached (Exh. 2).

2. Three exhibits were attached: copy of the Complaint in the Mississippi Action, filed May

February 8, 2001 (Dkt.# 8),[3] and a supplemental reply brief on February 23, 2001 (Dkt.# 9), in which he indicated that Durkin's counsel had been instructed by Frankel's counsel that Frankel is not willing to waive any privilege that he may have with respect to these documents.

In addition, on January 24, 2001, plaintiffs filed the pending Cross–Motion to Compel (Dkts.## 4–5);[4] plaintiffs filed a supplemental brief in support of their motion on February 23, 2001. (Dkt.# 10).

These motions were referred by Senior U.S. District Judge Ellen Bree Burns to this Magistrate Judge on April 11, 2001. (Dkt.# 11). During telephonic discovery conferences held on April 20, 2001 and June 19, 2001, counsel agreed to the following procedures: that Durkin's counsel would review the disputed documents at the U.S. Attorney's Office, that the U.S. Attorney's Office would copy the designated documents at plaintiffs' expense, that Durkin's counsel would review the documents to determine those documents to which defendant will assert the attorney-client privilege and those documents for which no privilege is asserted, that Durkin's counsel would distribute to plaintiffs' counsel copies of non-privileged documents, and the Magistrate Judge would conduct an *in camera* review of the documents for which a privilege was asserted. (Dkts.## 13–15). On July 31, 2001, Durkin's counsel submitted these documents to the Magistrate Judge's Chambers; such

documents have been filed under seal. (Dkt.# 16).

For the reasons stated below, Durkin's Motion to Quash Subpoena For Production (Dkt.# 1) and plaintiffs' Cross–Motion to Compel (Dkt.# 4) are *granted in part and denied in part.*

## I. DISCUSSION

The documents were organized into thirteen distinct files, as follows: (1) from Box 520, Sundew/Europlan; (2) from Box 520, Lacoff v. Sundew Int'l—Correspondence; (3) from Box 520, Lacoff v. Sundew Int'l—Notes; (4) from Box 520, Sundew/MHH, Inc. v. Xolar Corp.; (5) from Box 520, Sundew–Cybersmith—NY—Lease; (6) from Box 520, Sundew/Lincoln Town Cars; (7) from Box 520, WABFT/Lacoff—Interpleader Action; (8) from Box 521, Durkin & Polera, P.C.—Phone Message Pads; (9) from Box 521, Sundew—Criminal Matter; (10) from Box 521, Sundew—Schuchter v. Sukarno—Correspondence and Pleadings;[5] (11) Sundew—Schuchter v. Sukarno—Notes; (12) from Box 521, Devonshire—555 Riversville Road; and (13) from Box 522, WDWPT w/Belcic—527 Stanwich Road.

Of foremost concern to plaintiffs is any reference to wire transfers from Frankel's bank accounts. (*See* Letter, dated June 1, 2001). The Magistrate Judge has conducted a careful *in camera* review of these documents and concludes that the documents in Files Nos. 1–8, 10–13 are irrelevant, as they have no relation to the issues raised in Mississippi Action.[6] Thus, the

---

9, 2000 (Exh. A); copy of Affidavit of Process Server, dated December 29, 2000, with another copy of the Subpoena attached (Exh. B); and copy of letter from plaintiffs' counsel to Durkin's counsel, dated January 19, 2001 (Exh. C).

**3.** Attached was Durkin's Affidavit, dated Feb. 6, 2001.

**4.** Plaintiffs incorporated by reference the three exhibits attached to their brief in opposition. (Dkt.# 5). *See* note 2 *supra.*

**5.** Copies of the filings from the New York State action indicate that the caption was *Sukarno v. Schuchter.*

**6.** References are made to a relatively small wire transfer in File No. 4, but such transfer

only file at issue would be No. 9, appropriately entitled "Sundew—Criminal Matters."

Plaintiffs argue that by producing documents to the Grand Jury, Durkin has waived the privilege for such documents. (Dkt. # 3, at 6–7). Durkin, in contrast, argues that the privilege did not belong to him, that the documents were produced to the grand jury only after persons who might wish to assert the privilege signed a written waiver allowing production to the grand jury, and that the waiver signed was limited to production to the grand jury. (Dkt. # 8, at 3).[7] Durkin's Affidavit provided in relevant part:

> On August 1, 2000, I provided all records that I had relating to Martin Frankel or any of his associates in any way to the Office of the United States Attorney, pursuant to a grand jury subpoena. I received a written waiver from Frankel and others who might claim a privilege in these documents. However, the waiver concerned solely the criminal investigation, and I did not and do not understand that it waived the privilege for all purposes. It is my understanding that my attorney has written to counsel for Frankel and others regarding their position on this subpoena.

(Dkt. # 8, Durkin Aff't ¶ 2). In a supplemental brief, Durkin asserted that "counsel for Martin Frankel has directed the undersigned to assert, on behalf of Frankel, the attorney-client privilege with respect to any documents covered by that privilege, and that he is not willing to waive the privilege with respect to the subpoena involved in this case." (Dkt.# 9).

---

is directly related to a dispute with Xolar Corp.

The leading case in this circuit on the issue of waiver in this context is *In re Grand Jury Proceedings*, 219 F.3d 175 (2d Cir.2000)["*Grand Jury I*"], issued last summer. There, Doe Corporation's founder, chairman, and controlling shareholder ["Witness"] was subpoenaed to testify before a grand jury and his testimony lasted for a full day; despite the corporation's assertion of the attorney-client privilege, on eight occasions, Witness testified regarding advice Doe Corp. had received from its counsel. *Id.* at 180–81. Two months after Witness's grand jury testimony, the government moved to compel production of all of Doe Corp.'s withheld documents, which motion was granted by the District Judge, finding that Witness's testimony had waived the corporation's attorney-client privilege. *Id.* at 181–82.

The Second Circuit summarized:

> This court has recognized that implied waiver may be found where the privilege holder "asserts a claim that *in fairness* requires examination of protected communications." We have stated ... that fairness considerations arise when the party attempts to use the privilege both as "a shield and a sword." In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.

*Id.* at 182 (emphasis in original)(multiple citations omitted). The Second Circuit gave three illustrations of when an implied waiver may be found:

> "The quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have

---

7. The mechanism agreed to by counsel during the telephonic discovery conferences has made moot the other legal issues raised by counsel.

waived his privilege with respect to the advice that he received."

.    .    .    .    .

We have also recognized that a more limited form of implied waiver may be appropriate where disclosure occurred in a context that did not greatly prejudice the other party in the litigation.... Further, when waiver occurs as a result of inadvertent document disclosure, courts have limited the scope of that waiver based on the circumstances involved and overall fairness.

*Id.* at 182–83 (multiple citations omitted). "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Id.* at 183.

The Second Circuit placed considerable emphasis on the fact that Witness had testified in response to a grand jury subpoena:

We are mindful of the policy that "[n]owhere is the public's claim to each person's evidence stronger than in the context of a valid grand jury subpoena." . . .

In the situation before us, Witness was compelled to appear and to testify before the grand jury. Because the corporation does not enjoy the protection of the Fifth Amendment, Witness could not assert the Fifth Amendment on its behalf. Witness's alleged waiver occurred in the context of purely compelled testimony.

.    .    .    .    .

... Yet, insofar as the waiver analysis is premised on fairness considerations, that the waiver took place in the context of uncounseled testimony in the grand jury room is relevant to the analysis. *Id.* at 186–87 (multiple citations & footnote omitted).

Regarding the nature of the disclosure, the Second Circuit observed that on at least three occasions during his grand jury testimony, Witness testified about specific legal advice the Doe Corp. had received. *Id.* at 187. "Because the waiver inquiry depends heavily on the factual context in which the privilege was allegedly waived," the Court remanded the matter back to the district court for a further review of the entire transcript, not just redacted portions of it. *Id.* at 188 & n. 10. In addition, based upon the "truncated record," the Second Circuit was not persuaded that the government had been prejudiced. *Id.* at 188–90.

The government filed a post-remand motion to compel, which was denied earlier this year in *In re Grand Jury Proceedings*, No. M–11–189 (LAP), 2001 WL 237377 (S.D.N.Y. Mar.2, 2001)["*Grand Jury II* "]. Upon review of the entire transcript, the District Judge considered the four factors previously identified by the Second Circuit: (1) the corporate-agent dichotomy; (2) grand jury context; (3) nature of the disclosure; and (4) prejudice to the government. *Id.* at *3. Regarding the second factor, the District Judge found that this factor weighed slightly in favor of a finding that Witness waived Doe Corp.'s attorney-client privilege through his grand jury testimony, in that although Witness knew he had the right to leave the grand jury room to consult with counsel for any reason and although he occasionally invoked the corporation's privilege, on nine separate occasions he testified that Doe Corp. had taken certain actions based upon advice of counsel. *Id.* at *6–8.

The third factor also weighed in favor of a finding of waiver, because from a review of the entirety of Witness's testimony, " his recitation of the advice of counsel was deliberate and selective and an effort to

exculpate the corporation." *Id.* at *8–10. With respect to the last factor, the District Judge found that the government had several options by which to remedy any prejudice to it as a result of Witness's testimony. *Id.* at *10–11. In balancing all the factors, the District Judge, however, held that "considerations of fairness counsel that Witness's testimony before the grand jury did not effect a waiver of Doe Corp.'s attorney-client privilege." *Id.* at *11–12.

Application of the *Grand Jury I* and *Grand Jury II* decisions to the facts in this case is not a simple task. As the Second Circuit held in *Grand Jury I,* "[w]hether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." 219 F.3d at 183. The Second Circuit expressed concern that Witness had responded to a grand jury subpoena, which is not a voluntary situation, and that the waiver took place in the context of uncounseled testimony. *Id.* at 186–87. Upon remand, the District Judge emphasized that although Witness knew that he had the right to leave the grand jury room to consult with counsel and had occasionally invoked the corporation's privilege, he made nine separate references to the advice of Doe Corp.'s counsel, thus weighing slightly in favor of a finding of waiver. 2001 WL 237377, at *6–8.

From the factual and procedural history described by both sides, it does not appear that Durkin, or any of his clients, actively opposed the grand jury subpoenas. Durkin has not submitted copies of the written waivers submitted by Frankel and others. Durkin, an attorney, responded to a grand jury subpoena for the production of documents, as opposed to testimony, a situation which is far less intimidating and imposing. He, along with Frankel, had the luxury of time, which Witness apparently did

not have. From Durkin's recitation in his affidavit, the written waivers do not appear to be strongly worded. These factors similarly weigh in favor of a finding of waiver. The third factor addressed in the *Grand Jury* decisions also mitigates in favor of a finding of waiver, in that Durkin's response, like that of Witness, was "deliberate and selective." *Id.* at *8–10.

File No. 9 contains 109 pages, most of which has copies of items readily obtainable elsewhere, including copies of newspaper articles from the *Greenwich Times,* copy of the state search warrant, dated May 6, 1999, and the return thereof, the federal search warrant, dated May 11, 1999, filings in *United States v. Real Property Located at 889 Lake Avenue, Greenwich, Connecticut,* 3:99 CV 979(EBB), and the state computerized docket sheet. Others, such as records of phone calls from members of the media, and notes of conversations with members of the Greenwich Police Department, other attorneys, and potential witnesses, are irrelevant to the issues raised in the Mississippi Action. Three other documents are not covered by the attorney-client privilege—correspondence between Attorney Durkin and the Greenwich Police Department, dated May 6, May 27, and June 4, 1999—but similarly are not relevant. Durkin need not produce copies of these documents.

However, three letters from Durkin are relevant to plaintiffs' inquiries here, dated May 25, May 28, and June 11, 1999. Durkin shall produce copies of these documents **on or before September 17, 2001.** Except for this limited production, the documents shall remain under seal.

## II.  CONCLUSION

Accordingly, Durkin's Motion to Quash Subpoena For Production (Dkt.# 1) and plaintiffs' Cross–Motion to Compel (Dkt.# 4) are *granted in part and denied*

*in part* to the extent set forth in Section I *supra.*