UNITED STATES of America,

v.

Carmine AGNELLO, et al., Defendants.

No. 00 CR 205 NGRML.

United States District Court,
E.D. New York.

March 27, 2001.

## ORDER

GERSHON, District Judge.

The government seeks an order compelling attorneys Jeffrey Lichtman, Esq. and Marvyn Kornberg, Esq. to testify in the grand jury regarding certain conversations each had with defendant Carmine Agnello. All concerned parties, including Mssrs. Lichtman and Kornberg, neither of whom presently has an attorney-client relationship with Agnello, have had an opportunity to be heard. Agnello does not dispute that he waived his attorney-client privilege by testifying, and offering Lichtman's testimony, at his bail hearing as to certain conversations he had with Lichtman and Kornberg, although, as discussed below, there is a dispute as to the scope of the waiver. Co-defendants Steven Scala and New York Shredding Corp. ("NYSC") assert that a joint defense privilege bars the government from obtaining the testimony

of Kornberg and Lichtman.[1] NYSC additionally asserts that it has an independent claim of attorney-client privilege which protects all of Agnello's (and Scala's) conversations with Kornberg and Lichtman, to the extent that they sought legal advice in a case where NYSC was a named co-defendant, *i.e.*, in a state case brought prior to the case before this court in which Agnello, Scala, NYSC and others were defendants. Agnello and Scala are officers and owners of NYSC.

**Joint Defense.**

■ The joint defense privilege, or common interest rule, is an extension of the attorney-client privilege which "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 31 (1991). The joint defense privilege "is not an independent basis for privilege but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 213 B.R. 433, 435 (Bankr. S.D.N.Y.1997). The Second Circuit follows a strict interpretation of the common interest rule, under which "Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected." *Schwimmer*, 892 F.2d at 243; *see United States v. Weissman*, 1996 WL 737042, at *9 (S.D.N.Y.1996) (the Second Circuit "is unwilling to infer a joint defense agreement from the simple circumstance of a general purpose meeting held to discuss matters of common interest"), *aff'd*, 195 F.3d 96, 99–100 (2d Cir.1999).

■ The sole factual bases for the claim of joint defense protection are (1) the affidavit of Steven Scala, dated December 8, 2000, stating that, with his then lawyer Edward Schulman, Esq., he attended meetings at the office of Marvyn Kornberg, Esq., who was then representing Carmine Agnello, in "connection with pursuing a joint defense strategy" for the state case, and (2) Kornberg's letter of December 4, 2000, in which he states that "the conversation which the government wishes to question me about, *i.e.*, the collecting of weigh tickets, took place at a meeting among the defendants in the State Court proceedings and the attorney who represented the defendant Scala.... That meeting was for the purpose of creating a strategy for jointly defending the then existing State cases." Given this very limited showing defendants have not met the high standard set by the Second Circuit for establishing that the communications at issue were both made in the course of, and in furtherance of, an ongoing joint defense effort. *See Weissman*, at *23–24. The meeting described by Kornberg did not even include counsel for all of the defendants said to be meeting to create "a strategy" of joint defense.

■ In any event, the parties' arguments on this point largely miss the mark. Whether or not there was a qualifying

1. It is not clear whether Scala and NYSC continue to argue that the joint defense privilege applies to the testimony that the government seeks from Lichtman. Although their counsel originally argued in letters that the joint defense privilege applied to the testimony of both Kornberg and Lichtman, later submissions by counsel addressed the applicability of that privilege to Kornberg's testimony only. Lichtman is counsel for codefendant Mark Lomonaco in this case. Lomonaco has not raised an objection to the testimony the government seeks.

joint defense arrangement among the defendants at the time of Agnello's conversations with Kornberg and Lichtman, Agnello's co-defendants cannot establish that, once Agnello waived his privilege as to these communications, they have the right to stop the government from pursuing that waiver and examining Kornberg and Lichtman. A client who is part of a joint defense arrangement is entitled to waive the privilege for his own statements, and his co-defendants cannot preclude him from doing so. The co-defendants have not suggested that Agnello could have been prevented by the joint defense privilege from testifying as he did. They nonetheless claim that they can, by assertion of a joint defense privilege, preclude the natural consequences of such a waiver, namely, the government's right to examine the attorneys regarding the subjects as to which Agnello testified. They are wrong. All that they would be entitled to do, to the extent that a joint defense privilege did attach to the conversations, is stop Agnello from directly or indirectly revealing the privileged communications of other participants. 2 C. Mueller & L. Kirkpatrick, Federal Evidence § 188, pp. 333–34 (2d ed.1994); *see In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 922 (8th Cir.), *cert denied,* 521 U.S. 1105, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997) (when common interest doctrine applies, communications among clients to exchange information that relate to the matter are " 'privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication.' ") (quoting Restatement (Third) of the Law Governing Lawyers § 126(1) (Proposed Final Draft No. 1, 1996) [now § 76(1) of the Restatement as adopted] ). No one has suggested that Agnello breached the privileged conversations of anyone but himself, and the government is not seeking the privileged conversations of anyone but Agnello.

## Corporate Privilege of New York Shredding Corp.

■ NYSC argues that, in addition to the joint defense privilege, it has an independent privilege against the government's obtaining the testimony of Lichtman and Kornberg. Its argument seems to be that, while Agnello could waive his own privilege by testifying, he could not waive the privilege of the corporation of which he is a principal officer and owner. Again, NYSC does not suggest that Agnello could have been prevented from testifying at his bail hearing had the corporation asserted privilege, while he wished to waive it. It nonetheless argues that the natural consequence of the waiver, namely, that the government be permitted to inquire of the two attorneys concerning the conversations about which Agnello testified, can be precluded by the corporation's assertion of privilege.

■ The short answer to this argument is that, since NYSC had no power to stop Agnello from testifying on his own behalf, it has no power to stop the natural consequences of his waiver. There is simply no showing that NYSC had any privilege over what Agnello chose to say about his conversations with his attorneys nor over anything that Lichtman and Kornberg have to say about those conversations. There is no indication that these communications of Agnello with Kornberg or Lichtman were made for the purpose of enabling an attorney for NYSC to furnish legal advice to NYSC, which is the basis for recognition of a corporation's attorney-client privilege. *Upjohn Co. v. United States,* 449 U.S. 383, 392, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Without a showing that a communication was made by a corporate officer or employee to corporate counsel for purposes of

the corporation's obtaining legal advice, the privilege is inapplicable.

In addition, this is not a situation like that in *United States v. Doe,* 219 F.3d 175 (2d Cir.2000), upon which NYSC relies, where the government argued that the testimony of the corporation's chief executive officer before the grand jury, that certain conduct that he engaged in was based upon the advice of corporate counsel, had effected a "blanket waiver" of the corporation's privilege. *Id.* at 184. The government here does not claim that Agnello's testimony on certain limited subjects has effected *any* waiver of NYSC's attorney-client privilege. It merely seeks the garden variety opportunity to explore with the attorneys whose conversations have already been revealed by Agnello and by one of those attorneys, Mr. Lichtman— *attorneys who do not and did not represent NYSC*—the subject of Agnello's and Lichtman's testimony.

■ Since this is the case, NYSC must be understood as arguing that, where both the individual officers and the corporation have been charged, any privilege by a corporate officer about his own conduct is necessarily also a privilege shared by the corporation, and therefore any time a corporate officer wishes to waive his own privilege he can do so only with the permission of the corporation. There is no such rule protecting corporations; certainly the *Doe* case does not reach so far, nor is such a rule warranted by the rationale of the privilege as expressed in *Upjohn,* or by *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), which addressed the waiver of a corporation's attorney-client privilege as to communications with the corporation's counsel. Indeed, the dire implications for such a rule on an individual are exemplified by this case. Agnello chose to testify for the purpose of obtaining release on bail. The corporation faces no such issue as imprisonment in lieu of bail. A rule that automatically barred a corporate officer from testifying in so important a personal matter without obtaining the permission of the corporation would be unwise.

Even if the factors discussed in *Doe,* as to when a corporate executive's waiver gives rise to a corporate waiver were applicable, they point decisively to rejecting NYSC's effort to bar the government from obtaining the testimony of the two lawyers. First, the Court of Appeals in *Doe* found it highly significant that Doe Corp. was a publicly traded company which was not the alter ego of the executive. *Doe,* 219 F.3d at 185. Here in contrast NYSC is a closely held corporation of which Agnello is an officer and owner. Second, Agnello affirmatively offered his own testimony for his own purposes in litigation. Unlike the executive in *Doe, id.* at 187, he was not forced to give uncounseled testimony before the grand jury, but voluntarily, after consultation with his counsel, chose to testify when he could have remained mute. Third, Doe Corp. had affirmatively asserted its own privilege over the relevant subject matter. *Id.* at 184–85. Here, no such assertion ever occurred. Indeed, for the reasons stated above, there could have been no such assertion. (For this reason, all of the discussion by the parties as to whether NYSC had knowledge of Agnello's expected testimony is immaterial.)

■ Finally, it is clear that the Court of Appeals in *Doe* was concerned with principles of fairness. *Id.* at 185. Here, fairness would not be served if Agnello, recognizing that he has waived his privilege by testifying and presenting the testimony of one of the lawyers, could nonetheless avoid having the two lawyers testify in the grand jury through the assertion of

privilege by his corporation. Agnello would then be allowed to testify with impunity on his own behalf and say that he is waiving his privilege while allowing the corporation, which he controls, to assert the privilege.

**Scope of Waiver.**

 Finally, there is a dispute as to the scope of the waiver, that is, a dispute over what subject matters may be inquired of by the government. I now find that the government may inquire of Lichtman and Kornberg as to any discussions with Carmine Agnello on the following subjects: actions or investigative steps taken or to be taken by Agnello during his visits to the Willets Point area; the actual or anticipated or suggested acquisition of physical evidence including photographs of suspected government witnesses and weigh tickets; the exchange of such physical evidence between Agnello and the lawyers.