LEVAL, Circuit J.
 

 Respondent John Doe Co. (“Doe”)
 
 [1]
 
 appeals from an order of the United States District Court for the Southern District of New York (Preska, J.), granting in part the government’s motion to compel production, pursuant to grand jury subpoena, of documents that Doe asserted to be privileged. The order was issued in the context of an ongoing grand jury investigation into whether Doe had committed violations of the United States firearms laws. The documents ordered to be produced are notes made by Doe’s attorneys of meetings and conversations with officials of the Bureau of Alcohol, Tobacco, and Firearms (“ATF”), a division of the Department of Justice. The court held that, by sending a letter memorandum to the United States Attorney’s office, Doe had involuntarily waived the work-product privilege applicable to such attorneys’ notes.
 

 
 *249
 
 For the reasons set forth below, we REVERSE the district court’s order.
 
 [2]
 

 BACKGROUND
 

 The United States Attorney for the Southern District of New York, in conjunction with the grand jury, has been engaged in an investigation, centered on the Doe Company. Doe makes its facilities available to third parties to engage in purchase and sale transactions with one another. Doe is not a party to such transactions but receives a commission for the use of its facilities. Until Doe adopted procedures to prevent such sales, transactions by third parties included sales of firearms, which are subject to federal regulation and licensing, under the supervision of ATF. The U.S. Attorney’s grand jury inquiry concerns such questions as whether Doe’s role in the firearms transactions of third parties required that it possess a federal firearms license, whether some of the transactions by third parties were in violation of applicable federal laws and, if so, whether Doe bears responsibility for these violations.
 

 When Doe learned of the investigation, its attorneys submitted a 46-page letter to the United States Attorney’s office (the “Letter”) asserting an intention “to promote an expeditious resolution” of the investigation. The main messages of the Letter were that Doe had proceeded in the good faith belief that its actions in connection with firearms transactions were in conformity with law, that it had consulted ATF personnel “to ensure that it was acting in compliance with” the pertinent laws and was repeatedly advised that its operations were lawful and proper, and that the ATF’s Senior Counsel and other ATF officials had confirmed that Doe did not need to obtain a license to conduct its operations. The Letter asserted that Doe had never received “any contrary suggestion from any government agency.”
 

 The Letter named the particular ATF personnel who had furnished assurances of the lawfulness of Doe’s conduct, including ATF’s Senior Counsel, along with their telephone numbers, and invited the United States Attorney to call to “confirm that the ATF’s position toward [Doe] has been clear since [the] first meeting:
 
 [Doe’s] operations were in full compliance
 
 ” with the federal laws. (Emphasis in original.) Finally, the Letter asserted, “Nothing in this letter is intended to waive any applicable privilege or protection available under law.”
 

 Upon its receipt of Doe’s letter, the government caused the issuance of a grand jury subpoena for notes taken by Doe attorneys and their agents during meetings with ATF personnel, as well as notes taken by attorneys of interviews with Doe employees relating to the substance of the ATF’s representations to Doe. Doe objected, claiming the notes were protected by the attorney work-product privilege. The government then moved in the district court to compel their production.
 

 The district court granted the government’s motion to compel as to portions of the subpoenaed attorney notes. The Court reasoned that by submitting its letter to the United States Attorney’s office asserting its belief in the lawfulness of its operations and relating the assurances it received from ATF personnel, Doe had involuntarily waived its privileges with respect to its attorneys’ notes. Doe brought this appeal.
 

 
 *250
 
 DISCUSSION
 

 It is well established doctrine that in certain circumstances a party’s assertion of factual claims can, out of considerations of fairness to the party’s adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted.
 
 See, e.g., United States v. Nobles,
 
 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975);
 
 United States v. Bilzerian,
 
 926 F.2d 1285 (2d Cir.1991). The loss of the privilege in these circumstances is sometimes described as
 
 implied waiver, see, e.g., In re Grand Jury Proceedings,
 
 219 F.3d 175, 182-84 (2d Cir.2000);
 
 Bilzerian,
 
 926 F.2d at 1293, sometimes as
 
 “at issue” waiver
 
 because it results from the party having placed a contention at issue,
 
 see, e.g., Granite Partners, L.P. v. Bear, Steams & Co., Inc.,
 
 184 F.R.D. 49, 54 (S.D.N.Y.1999);
 
 Worthington v. Endee,
 
 177 F.R.D. 113, 116-117 (N.D.N.Y.1998); 6 Moore’s Federal Practice 26.70[6][c] at 26-226 (3d ed. 1997) (“A party also impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue.”). Because the words
 
 implied
 
 and
 
 waiver
 
 both tend to suggest that the party possessing the privilege
 
 intended
 
 to give it up, the terms
 
 waiver,
 
 and
 
 implied waiver,
 
 are not especially appropriate designations for circumstances in which the party possessing the privilege makes no representation, express or implied, that it intends to surrender its privilege. In such circumstances, the rule is perhaps more aptly described as one of forfeiture, rather than waiver.
 

 Forfeiture of this nature is justified by considerations of fairness to the adversary. In some circumstances, courts have ruled that it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party’s contentions. While we have sometimes used broad language in describing the doctrine, such as generalizing about the incompatibility of using the assertions as a “sword” while using privileges attaching to related matter as a “shield,” because the doctrine is rooted in fairness we have also cautioned against broad generalizations, stressing that “[wjhether fairness requires disclosure ... is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted.”
 
 In re Grand Jury,
 
 219 F.3d at 183.
 

 The district court relied on this doctrine to rule that Doe had forfeited its work product privilege for notes taken by its attorneys relating to Doe’s communications with ATF personnel. First, as to advice received by Doe from ATF personnel, the court stated, “[I]t would be unfair to require the government to accept what might be a selective disclosure ... without affording it the opportunity to examine all of the material on which [the disclosure] is based.” In addition, because Doe also made assertions in its Letter about its own state of mind — its own belief in the lawfulness of its procedures — the court observed that “[b]y putting at issue [its] good faith belief ... Doe Corp. has impliedly waived attorney work product protection,” and that without such a ruling “the government [would be] denied information which is critical to the grand jury’s investigation.”
 

 We respectfully believe that in reaching these conclusions the court did not give appropriate consideration to the particular circumstances in which the events occurred — specifically, the fact that Doe’s letter was gratuitously delivered to the United States Attorney, and only the United States Attorney, in relation to the latter’s conduct of a grand jury investigation into Doe’s activities. Focusing on the re
 
 *251
 
 spective roles and powers of these adverse parties in that context, we believe there is no basis for concluding that the United States Attorney suffered any unfair prejudice in receiving Doe’s letter while Doe continued to assert its privilege with respect to the notes taken by its attorneys.
 

 The point is best illuminated by examining examples of circumstances in which courts have found such involuntary forfeiture of the privilege and comparing them to the present case. The unfairness courts have found which justified imposing involuntary forfeiture generally resulted from a party’s advancing a claim to a court or jury (or perhaps another type of decision maker) while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim. In
 
 United States v. Nobles,
 
 for example, the defendant in a criminal trial wished to call to the stand an investigator who on the defendant’s behalf had interviewed the prosecutor’s principal incriminating witnesses. 422 U.S. at 229, 95 S.Ct. 2160. The defendant intended to elicit from the investigator that the prosecution witnesses had made statements to him which substantially undermined their credibility in identifying the defendant as the perpetrator of the crime. The investigator had prepared a report of the interviews. The prosecutor demanded that the report be produced; the defendant refused to produce it on grounds of work-product privilege. The trial court ruled, and the Supreme Court agreed, that if the investigator was to be called as a defense witness, testifying to the jury about his interviews of the prosecution witnesses, the defendant’s privilege with respect to the investigator’s report about those interviews would be forfeited and the report would be ordered produced to the prosecutor. It would be unfair to the prosecutor to allow the defendant to present this testimony to the jury without giving the prosecutor access to a report which might effectively impeach it. See
 
 Nobles,
 
 422 U.S. at 239-40, 95 S.Ct. 2160.
 

 Our court reached a very similar conclusion in
 
 Bilzerian,
 
 926 F.2d 1285. The defendant in a criminal securities trial sought a pretrial ruling that his attorney-client privilege would remain intact, shielding the advice he had received from his attorneys, notwithstanding testimony he proposed to give that he did not
 
 willfully
 
 violate the securities laws because he believed his actions were consistent with law. The trial court ruled, and we agreed, that if the defendant gave testimony asserting to the jury his belief in the lawfulness of his actions, fairness would require that the prosecutor have access to the advice he in fact received from his attorneys because this evidence might impeach his claim of innocent state of mind.
 

 Unfairness was crucial to both rulings: In the courts’ perception, it would be unfair to force the prosecutor to run the risk that the jury would accept the defendant’s claims as to the facts the defendant put in issue while allowing the defendant, by assertion of his privileges, to deny the prosecutor access to directly pertinent material that might effectively impeach the defendant’s claims.
 

 The present case, in contrast, is completely lacking that element of unfairness. The U.S. Attorney is conducting an investigation before the grand jury. Doe is a subject of the investigation. The U.S. Attorney’s office in its sole discretion decides whát evidence will be placed before the grand jury. Doe’s letter, in which it made claims about the advice it had received from ATF and about its innocent state of mind, was delivered
 
 only
 
 to the U.S. Attorney. It was not seen by the grand jury, much less by a petit jury or court adjudi-
 
 *252
 
 eating Doe’s claims of innocent state of mind. It is impossible to see how the U.S. Attorney is subjected to any unfairness as the result of its own receipt of the Letter.
 

 The district court believed that Doe inflicted unfairness on the prosecutor and forfeited its privilege merely because it told the prosecutor it believed its actions were within the law. The court explained, “By putting at issue Doe Corp.’s good faith belief ..., Doe has impliedly waived attorney work-product protection.” If the district court’s reasoning represented the rule of law, it would follow that whenever a suspect in a criminal proceeding told the prosecutor or an investigating agent that he believed he had done nothing wrong, or whenever a party to a brewing civil dispute made a statement to his adversary to the same effect, he would thereby forfeit his privileges.
 

 That is not the law. Forfeiture of this type is premised on the
 
 unfairness
 
 to the adversary of
 
 having to defend
 
 against the privilege holder’s claim without access to pertinent privileged materials that might refute the claim. Thus, in
 
 Bilzerian,
 
 because the legal advice the defendant in fact received might well have demonstrated the falsity of his claim to the jury about his belief, he could not fairly both assert testimony that implicitly communicated his version of the legal advice he received and simultaneously withhold disclosure of the legal advice he actually received. But the reasoning of
 
 Bilzerian
 
 and the other pertinent authorities in no way suggests that, merely by telling the prosecutor that he believes he is innocent, a defendant or suspect forfeits his privileges.
 

 The same considerations apply to Doe’s assertions in the Letter that it received assurance from ATF officials that its procedures were lawful. Had Doe offered testimony to this effect as part of its defense at trial, the case would be very similar to
 
 Nobles.
 
 Under authority of
 
 Nobles,
 
 the offer of such trial testimony would, in all likelihood, cause forfeiture of Doe’s work product privilege covering its attorneys’ notes of these interviews because permitting Doe to enforce its privilege would unfairly deprive the prosecutor of the means to refute Doe’s testimony. But Doe did not offer such testimony at a trial. It told no one of its claims but the U.S. Attorney and it did that through a confidential communication.
 
 [3]
 
 The district court said “it would be unfair to require the government to accept what might be a selective disclosure.” But the government is not required to accept anything. With respect to its conduct of the investigation, the U.S. Attorney will do whatever it deems appropriate. If the U.S. Attorney determines that it should not credit Doe’s claims that it received reassurances from ATF personnel without seeing the notes taken by Doe’s attorneys relating to those communications, the U.S. Attorney will simply refuse to credit Doe’s representations. If the U.S. Attorney determines that it cannot accept Doe’s representations as to its innocent state of mind while Doe continues to shield its attorneys’ notes
 
 *253
 
 from the U.S. Attorney’s inspection, then the U.S. Attorney will refuse to credit those representations as well. The government is in no way worse off as the result of its receipt of Doe’s letter than it would be if the Letter had never been delivered. It does not run the risk that some independent decisionmaker will accept Doe’s representations without the government having adequate opportunity to rebut them. There is in short no unfairness to the government and therefore no basis for holding that Doe forfeited its privileges as the result of having placed its claims in issue.
 
 [4]
 

 Where the governing consideration is fairness, each case turns on its own particular facts and no one case is quite like another. Among our precedents, the case that seems to us to most resemble this one in the critical elements is
 
 In re von Bulow,
 
 828 F.2d 94 (2d Cir.1987). That was a case of civil litigation brought by children against their stepfather, charging him with having attempted to kill his wife (their mother) by injecting her with insulin, which put her into an irreversible coma. The defendant had been convicted of attempted murder in the Rhode Island courts, but the conviction was reversed on appeal and the defendant was eventually acquitted on retrial. Subsequently, the defendant’s attorney published a book about the case in which, with the defendant’s authorization, he revealed numerous confidences imparted by the defendant. Plaintiffs moved to compel the defendant to disclose communications with his attorney, contending that by consenting to the publication of the book revealing confidences he had communicated to his attorney in four conversations, the defendant had waived his privilege, not only as to the specific revelations in the book but also as to the entire content of the four conversations from which the disclosed materials were drawn. The district court granted the motion, finding that it would be unfair to permit the defendant to make selective
 
 *254
 
 disclosure while using his privilege to prevent his adversary from gaining access to the complete communication. The defendant petitioned this court for mandamus, to overturn the disclosure order. We granted the writ and vacated the order. We explained that the “rule protecting the party, the factfinder, and the judicial process from selectively disclosed and potentially misleading evidence does not come into play when, as here, the privilege-holder ... has made
 
 extrajudicial disclosures,
 
 and those disclosures have not subsequently been placed at issue during litigation.”
 
 Id.
 
 at 102 (emphasis added).
 

 The district court below believed that our case should be distinguished from
 
 von Bulow
 
 because, “[although [Doe’s disclosures were] not made to a court, Doe made the submission in the hope of influencing the initiation of the judicial process.” The district court therefore concluded that Doe’s disclosures should not be considered “extrajudicial.” We believe this represented a misunderstanding of the precedents. The unfairness and distortion of process, which the
 
 von Bulow
 
 opinion identified as the justification for a finding of forfeiture, has been found when one party advanced a contention to a decisionmaker, such as a court or jury, while denying its adversary access to privileged materials which might have been used to rebut the privilege holder’s contention. The crucial issue is not merely some connection to a judicial process but rather the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion. No such unfairness was present here.
 
 [5]
 
 If anything,
 
 von Bu-low
 
 presented a stronger case for forfeiture than ours because the defendant in that case had asserted his contentions to the public, attempting to win over the “court of public opinion,” whereas here Doe has made its assertions only to its adversary, which is free to ignore them and cannot have its position compromised by virtue of the fact that Doe has made the assertions without relinquishing its privilege.
 

 We recognize that the standard of review of such decisions is highly deferential.
 
 See, e.g., United States v. Adlman,
 
 68 F.3d 1495, 1499 (2d Cir.1995);
 
 Horn & Hardart Co. v. Pillsbury Co.,
 
 888 F.2d 8, 12 (2d Cir.1989). Nonetheless we conclude that, as in
 
 von Bulow,
 
 the district court’s order of disclosure must be vacated. Doe did not place the matter
 
 at issue,
 
 so as to cause forfeiture of privileges by reason of unfairness, merely by stating its claim to opposing counsel, especially when the statement was accompanied by explicit insistence on retention of privileges. Such
 
 *255
 
 circumstances presented no unfairness that would justify the forfeiture.
 

 CONCLUSION
 

 The district court’s order of disclosure is REVERSED.
 

 [1]
 

 . This appeal arises out of an ongoing grand jury investigation. No indictments have been issued. All proceedings have been conducted in closed courtrooms, and the record and briefs are under seal. To preserve the secrecy of the grand jury proceedings, we use pseudonyms and discuss the facts circumspectly.
 

 [2]
 

 . Another order of the district court consolidated with this one in the same appeal has been affirmed by a separate summary order.
 

 [3]
 

 . Comparison of the posture of this case with
 
 Nobles
 
 and
 
 Bilzerian
 
 shows that the position here advanced by the government goes substantially further than those rulings. In those cases, the courts ruled that the defendant would forfeit the privilege with respect to certain materials, but
 
 only if
 
 the defendant gave certain testimony at trial before the jury. Here, the government contends that Doe’s mere act of telling the prosecutor its position results in such waiver. In
 
 Nobles
 
 and
 
 Bilzeri-an
 
 each defendant had informed the prosecutor, and also the court, of his position and his possible intention to give such testimony. Under the government’s present theory, those defendants would have already waived their privilege, merely by telling the judge and prosecutor, regardless whether they went on to so testify before the jury. The courts of course made no such ruling.
 

 [4]
 

 . The district court believed its conclusion was supported by the Fourth Circuit's holding in
 
 In re Martin Marietta Corp.,
 
 856 F.2d 619 (4th Cir. 1988). In that case a corporation, which had been indicted and sued by the government for fraud in military procurement, gave the government a memorandum upon which the government relied in reaching a global settlement of the corporation’s criminal and civil liability. The question arose subsequently in a different proceeding whether the corporation had forfeited its privileges pertaining to documents relevant to the assertions in the memorandum. The Fourth Circuit ruled that it had.
 

 We acknowledge that
 
 Martin Marietta
 
 does not conform to our description of the characteristic circumstances in which factual assertions will cause forfeiture of the privileges of the party making the assertions. The corporation's assertions in that case were not made to an adjudicative authority, as was the case in
 
 Nobles
 
 and
 
 Bilzerian.
 
 They were made only to the U.S. Attorney.
 

 At the same time, however, as compared with our facts, the facts of
 
 Martin Marietta
 
 better supported a claim that it would be unfair to the government to allow the corporation to continue thereafter to assert its privileges. In
 
 Martin Marietta,
 
 the government had entered into a global settlement with the corporation in reliance on the corporation's representations. Having irrevocably compromised its legal position in reliance on the corporation’s representations, the government could more plausibly assert that the corporation forfeited its legal right to withhold disclosure of privileged documents that might impeach the representations upon which the government relied.
 

 In pointing out this distinction, we do not ■ mean to endorse the Fourth Circuit's conclusion. We make no suggestion one way or the other as to how we would rule if the facts of
 
 Martin Marietta
 
 were to occur in this Circuit. We merely observe that, while it is true that the facts of that case were more favorable to the argument here advanced by the government than those of
 
 Nobles
 
 or
 
 Bilzerian,
 
 they were less favorable to the government than our facts. Our facts caused no unfairness to the government and resulted in no forfeiture.
 

 [5]
 

 . Our earlier opinion in this case is not to the contrary. Although we there acknowledged the obvious truth that "settlement negotiations or voluntary disclosure programs” are advantageous to the target of an investigation,
 
 In re Grand Jury,
 
 219 F.3d at 191, we also held that an incomplete offer of information in such a setting is unlikely to be prejudicial to the interests of the investigating body,
 
 id.
 
 at 189-90. Of course a false implication of full disclosure might present a different case. If a private entity asked a prosecuting authority to change its position or adopt a position based on the implicit representation that the entity was making full disclosure, that might well present a different basis for inferring a waiver.
 
 Cf. In re Sealed Case
 
 676 F.2d 793, 823 (D.C.Cir.1982) (“Corporations may protect their privileges without manipulation simply by being forthright with their regulators and identifying material as to which they claim privilege at the time they submit their voluntary disclosure reports.... But if they choose to make a pretense of unconditional disclosure, they bear another risk — that we will imply a waiver of privilege with respect to any material necessary for a fair evaluation of their disclosures.”).