No. 07-5702-op
*In re County of Erie*

UNITED STATES COURT OF APPEALS
                       FOR THE SECOND CIRCUIT

                         August Term 2007

                      Docket No. 07-5702-op

(Submitted:  May 13, 2008        Decided: October 14, 2008)
_____

IN RE THE COUNTY OF ERIE

ADAM PRITCHARD, EDWARD, ROBINSON, AND JULENNE
TUCKER, BOTH INDIVIDUALLY, AND ON BEHALF OF A
CLASS OF OTHERS SIMILARLY SITUATED,

                    Plaintiffs-Respondents,

        v.

THE COUNTY OF ERIE, PATRICK GALLIVAN, BOTH
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY
AS SHERIFF OF THE COUNTY OF ERIE, TIMOTHY
HOWARD, BOTH INDIVIDUALLY AND AS UNDERSHERIFF
OF THE COUNTY OF ERIE, DONALD LIVINGSTON, BOTH
INDIVIDUALLY AND AS ACTING SUPERINTENDENT OF
THE ERIE COUNTY CORRECTIONAL FACILITY, AND
ROBERT HUGGINS, BOTH INDIVIDUALLY AND AS
DEPUTY SUPERINTENDENT OF THE ERIE COUNTY
CORRECTIONAL FACILITY,

                    Defendants-Petitioners,

H. McCARTHY GIPSON, BOTH INDIVIDUALLY AND AS
SUPERINTENDENT OF THE ERIE COUNTY HOLDING CENTER,

                    Defendant.

_____

Before:  FEINBERG, MINER, and B.D. PARKER, Circuit Judges.

     Petition for Writ of Mandamus directing the District Court
to vacate its order requiring the production of ten e-mail
communications allegedly protected by the attorney-client
privilege, the District Court having determined that the
petitioners waived the privilege by placing in issue the
information contained in the disputed e-mails.

1

Petition granted.

James P. Domagalski, Frank T. Gaglione, Hiscock & Barclay, LLP, Buffalo, NY, for Defendants-Petitioners.

Elmer Robert Keach, III, Law Offices of Elmer Robert Keach, III, P.C. Amsterdam, NY, for Plaintiffs-Respondents.

Charles J. LaDuca, Cuneo, Gilbert & LaDuca, LLP, Washington DC, for Plaintiffs-Respondents.

MINER, Circuit Judge:

I.

This Petition calls upon us once again to resolve an important question of attorney-client privilege raised in the course of discovery in the ongoing litigation challenging the strip search practices at the Erie County Jail. In requiring the production of ten e-mails that passed between attorney and client in this litigation, the District Court applied the rule that the attorney-client privilege is deemed waived when the advice of counsel is placed in issue. We recognize that there has been some uncertainty surrounding the rule and consider the need for clarification of sufficient importance to invoke the remedy of mandamus.

II.

The underlying action was commenced in July 2004 by Plaintiffs-Respondents Adam Pritchard, Edward Robinson, and Julenne Tucker on behalf of themselves and a class of others similarly situated as plaintiffs (here the "Respondents"),

2

asserting that the written policy of the Erie County Sheriff's Office requiring an invasive strip search of all detainees entering the Erie County Holding Center or Erie County Correctional Facility was violative of the Fourth Amendment.  See In re County of Erie, 473 F.3d 413, 415-16 (2d Cir. 2007) ("Erie I").  Named as defendants in the complaint in the underlying action, brought pursuant to the provisions of 42 U.S.C. § 1983, are Defendants-Petitioners County of Erie, Erie County Sheriff Gallivan, Undersheriff Howard, Acting Superintendent Livingston of the Erie County Correctional Facility, and Deputy Superintendent Huggins of the Erie County Holding Center (here the "Petitioners"), and defendant Superintendent Gipson of the Erie County Holding Center.  Id. at 416.

During the course of discovery, the Magistrate Judge to whom the matter was assigned ordered the production of ten specific e-mail communications claimed to be subject to the attorney-client privilege and withheld by Petitioners.  See id.  These documents consisted of correspondence between the offices of the Erie County Attorney and the Erie County Sheriff.  See id.  With respect to content, suffice it to say, as we did in our preceding opinion involving these same e-mails, that the County Attorney's Office "reviewed the law concerning strip searches of detainees, assessed the County's current search policy, recommended alternative policies, and monitored the implementation of these policy changes."  Id.  The Magistrate Judge opined that the communications did not involve legal advice or analysis but dealt

3

only with administration and policy, including the drafting of regulations to change existing policy. See id. The District Judge overruled objections to the Magistrate Judge's order after an independent review of the e-mails and directed that the documents be produced. Respondents thereafter filed in this Court a Petition for a Writ of Mandamus directing the District Court to vacate its order. See id.

III.

After reviewing the submissions of the parties in regard to the Petition, we first determined that the writ was an appropriate device to review the discovery order in this case because the Petitioner presented an important issue of first impression: whether communications passing between a government attorney without policy-making authority and a public official are protected by the attorney-client privilege when the communications evaluate the policies' legality and propose alternatives. Id. at 417. We also noted that the privilege would be lost or undermined if review were to await final judgment. Id. An analysis of the attorney-client privilege in the government context and its application to the factual background of this case led us to conclude

> that each of the ten disputed e-mails was sent for the predominant purpose of soliciting or rendering legal advice. They convey to the public officials responsible for formulating, implementing and monitoring Erie County's corrections policies, a lawyer's assessment of Fourth Amendment requirements, and provide guidance in crafting and implementing alternative policies for compliance. This advice — particularly when viewed in the context in which it was solicited and rendered — does not constitute general

4

policy or political advice unprotected by the privilege.

Id. at 422—23 (internal quotation marks and citations omitted). We therefore granted the writ and directed the District Court to enter an order preserving the confidentiality of the e-mails in question. Our order granting the writ allowed the District Court on remand "to determine whether the distribution of some of the disputed e-mail communications to others within the Erie County Sheriff's Department constituted a waiver of the attorney-client privilege." Id. at 423.

IV.

On remand, the District Court ordered briefing and oral argument to determine, in accordance with our remand order, whether there was a waiver of the attorney-client privilege with respect to any of the e-mail communications that passed between the office of the Erie County Attorney and the Sheriff's Department. Following oral argument, the court issued a written opinion analyzing the circumstances under which disclosure of confidential communications might constitute a waiver of the attorney-client privilege. Pritchard v. County of Erie, No. 04-CV-00534C, 2007 WL 1703832 (W.D.N.Y. June 12, 2007). Turning to the facts of this case, the District Court concluded

> that defendants have satisfied their burden of demonstrating with sufficient "factual specificity," . . . that dissemination of any of the ten e-mail communications ruled upon by the Second Circuit was limited to Sheriff's Department employees who needed to know the content of the communication in order to effectively perform their jobs or to make informed policy decisions concerning the authorization of strip searches of inmates or detainees . . . . In the

5

absence of any factual showing by plaintiffs to suggest a contrary result, the court finds there has been no waiver of the attorney-client privilege pertaining to these particular ten e-mail communications.

Id. at *6.

On a motion for reconsideration, however, the District Court reversed fields and determined that the attorney-client privilege had been waived as to the ten e-mails. Pritchard v. County of Erie, No. 04-CV-00534C, 2007 WL 3232096 (W.D.N.Y. Oct. 31, 2007). In granting the motion, the court found "that the defendants [had] waived the attorney-client privilege with respect to the disputed e-mails by placing the information in those communications at issue in the litigation." Id. at *5. Characterizing this forfeiture of the privilege as an "at issue," or "implied," waiver, the District Court noted our pronouncement that "[i]t is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted." Id. at *2 (citing John Doe Co. v. United States, 350 F.3d 299, 302 (2d Cir. 2003)).

In arriving at its conclusion, the District Court relied on the test first put forth in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975). Hearn required a positive response to three separate inquiries:

whether: (1) the assertion of the privilege was a result of some affirmative act, such as filing suit or pleading in response to a claim; (2) through the affirmative act, the asserting party has put the protected information at issue by making it relevant to

6

the case; and (3) the application of the privilege would have denied the opposing party access to information vital to the defense.

Pritchard, 2007 WL 3232096, at *2 (citing Hearn, 68 F.R.D. at 581).

In support of its finding that the test enunciated in Hearn was met in this case, the District Court pointed to the Petitioners' response to Respondents' claim in the underlying action that invasive strip searches were undertaken without regard to the nature of the crime or individualized suspicion and therefore pursuant to an unlawful policy:

> The prison officials respond that there was no such policy in place, or that the policy that was in place authorized searches of individual detainees in accordance with constitutional requirements. Defendants also claim qualified immunity from suit based on "an objectively reasonable belief that their actions were lawful and not in violation of any of [Plaintiffs-Respondents'] clearly established constitutional rights."

Id. at *4.

In its analysis, the District Court adverted specifically to the deposition testimony of Defendant-Petitioner Donald Livingston, who held a supervisory position at the Erie County Jail. Id. at *5. Responding to questions surrounding a memorandum that he had prepared directing jail personnel to discontinue routine strip searches of new inmates, Livingston stated that there were ongoing discussions with the County Attorney's Office regarding changes in the law. Id. Further testimony by Livingston regarding advice of counsel was terminated by the objection of counsel for Petitioners.

7

Defendant Gipson, the jail employee who signed the memorandum, testified at his deposition that the County Attorney's Office was involved in rewriting the strip search policy. Id. The District Court stated that "this testimony clearly indicates [Defendants-Petitioners'] reliance on privileged communications to support the contention that the strip search policy . . . was lawful." Pritchard, 2007 WL 3232096, at *5. Even at the pleading stage, according to the District Court, "pleading conduct in conformity with the law, and then asserting privilege to protect from disclosure facts that might disprove this contention . . . has placed the advice rendered by [Defendants-Petitioners'] counsel about the legality of the strip search policy directly in issue in the case." Id. at *4.

V.

In Erie I, we reiterated our long-standing rule that the potential invasion of a privilege appropriately calls forth a writ of mandamus if a three-pronged test is met: "(A) the petition raises an important issue of first impression; (B) the privilege will be lost if review must await final judgment; and (C) immediate resolution will avoid the development of discovery practices or doctrine that undermine the privilege." 473 F.3d at 416—17. While Respondents concede that the second and third prongs have been satisfied, they strenuously argue that the first has not. They contend that the "contours" of the at-issue (or implied) waiver have been firmly established. We disagree and

8

see the need to clarify the scope of the waiver to modify the very broad application of the rule that has found favor in some quarters and is exemplified by the District Court's opinion in this case.

Although we have cited Hearn in the past in support of some general propositions, we never have decided whether the entirety of the test put forward in that case and relied upon by the District Court was definitive. See In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (citing Hearn for the proposition that "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party"); United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991) (citing Hearn for the proposition that "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications").

Courts in our Circuit and others have criticized Hearn and have applied its tests unevenly. See, e.g., Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994) (deeming Hearn to be of "dubious validity" because, although it "dress[es] up [its] analysis with a checklist of factors, [it] appear[s] to rest on a conclusion that the information sought is relevant and should in fairness be disclosed"); Pereira v. United Jersey Bank, Nos. 94 Civ 1565 & 94 Civ 1844, 1997 WL 773716, at *3 (S.D.N.Y. Dec. 11, 1997) ("Hearn is problematic insofar as there are very

9

few instances in which the Hearn factors, taken at face value, do not apply and, therefore, a large majority of claims of privilege would be subject to waiver."); Allen v. West Point-Pepperell, Inc., 848 F. Supp. 423, 429 (S.D.N.Y. 1994) (noting that district courts within this Circuit have reached conflicting decisions in the application of Hearn, and rejecting reliance "upon a line of cases in which courts have unhesitatingly applied a variation of the Hearn balancing test"); Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 847 F. Supp. 360, 363 (W.D. Pa. 1994) (rejecting the third Hearn factor for vagueness and overbreadth); Connell v. Bernstein-Macaulay, Inc., 407 F. Supp. 420, 422 (S.D.N.Y. 1976) ("The actual holding in [Hearn] is not in point because the party there asserting the privilege had expressly relied upon the advice of counsel as a defense to the plaintiff's action.").

The test also has been subject to academic criticism. See, e.g., Richard L. Marcus, The Perils of Privilege: Waiver and the Litigator, 84 MICH. L. REV. 1605, 1628-29 (1986); Note, Developments in the Law —— Privileged Communications, 98 HARV. L. REV. 1450, 1641—42 (1985) ("[T]he faults in the Hearn approach are (1) that it does not succeed in targeting a type of unfairness that is distinguishable from the unavoidable unfairness generated by every assertion of privilege, and (2) that its application cannot be limited."). In view of the foregoing, it seems to us that there is a need for clarification of the scope of the at-issue waiver and the circumstances under which it should be applied.

10

VI.

The attorney-client privilege is one of the "oldest recognized privileges for confidential communications." <u>Swidler & Berlin v. United States</u>, 524 U.S. 399, 403 (1998). Its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." <u>Id.</u> at 403 (internal quotation marks omitted). Therefore, rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution. Generally, "[c]ourts have found waiver by implication when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense. . . ." <u>Sedco Int'l S.A. v. Cory</u>, 683 F.2d 1201, 1206 (8th Cir. 1982). The key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver that the opposing party <u>relies</u> on the privileged communication as a claim or defense or as an element of a claim or defense. The assertion of an "advice-of-counsel" defense has been properly described as a "quintessential example" of an implied waiver of the privilege. <u>See</u> <u>In re Kidder Peabody Secs. Litig.</u>, 168 F.R.D. 459, 470 (S.D.N.Y. 1996).

In <u>Bilzerian</u>, the defendant argued that he did not intend to violate the securities laws that he was charged with violating

11

and contended that the testimony he sought to introduce regarding his good faith efforts to comply with the laws did not implicate any reliance on privileged communications. 926 F.2d at 1291. We agreed with the District Court in that case that if Bilzerian testified as to good faith, the door would be opened to cross-examination that might require him to divulge otherwise privileged communications with his attorney. Id. at 1294. We opined that "[t]he trial court's ruling left defendant free to testify without getting into his state of mind, but correctly held that if he asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal." Id.

We noted that the District Court's ruling in Bilzerian left the defendant's privileged communications intact if he merely denied criminal intent but did not assert good faith or if he argued good faith only through defense counsel and the examination of witnesses. Id. at 1293. Accordingly, the assertion of a good-faith defense involves an inquiry into state of mind, which typically calls forth the possibility of implied waiver of the attorney-client privilege.

Underlying any determination that a privilege should be forfeited is the notion of unfairness. This notion implicates only "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the

12

assertion." John Doe Co., 350 F.3d at 306. And we have made it clear that "[w]hether fairness requires disclosure has been decided . . . on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." In re Grand Jury, 219 F.3d at 183.

We agree with its critics that the Hearn test cuts too broadly and therefore conclude that the District Court erred in applying it here. According to Hearn, an assertion of privilege by one who pleads a claim or affirmative defense "put[s] the protected information at issue by making it relevant to the case." Hearn, 68 F.R.D. at 581. But privileged information may be in some sense relevant in any lawsuit. A mere indication of a claim or defense certainly is insufficient to place legal advice at issue. The Hearn test presumes that the information is relevant and should be disclosed and would open a great number of privileged communications to claims of at-issue waiver. Nowhere in the Hearn test is found the essential element of reliance on privileged advice in the assertion of the claim or defense in order to effect a waiver.

We hold that a party must rely on privileged advice from his counsel to make his claim or defense. We decline to specify or speculate as to what degree of reliance is required because Petitioners here do not rely upon the advice of counsel in the assertion of their defense in this action. Although the District Court held, inter alia, that the qualified immunity defense asserted by Petitioners placed the privileged communications

13

between the County Attorney's Office and the Sheriff's personnel at issue, this is not so. "Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007) (internal quotation marks omitted). The question of whether a right is "clearly established" is determined by reference to the case law extant at the time of the violation. See Moore v. Andreno, 505 F.3d 203, 215—16 (2d Cir. 2007). This is an objective, not a subjective, test, and reliance upon advice of counsel therefore cannot be used to support the defense of qualified immunity.

Petitioners do not claim a good faith or state of mind defense. They maintain only that their actions were lawful or that any rights violated were not clearly established. In view of the litigation circumstances, any legal advice rendered by the County Attorney's Office is irrelevant to any defense so far raised by Petitioners. Here, as in John Doe Co., there is no unfairness to the Respondents, because they are "in no way worse off" as a result of the disclosure that communications exist than they would be if they were unaware of them. Doe, 350 F.3d at 305. The party asserting the privilege in John Doe Co. had not, as Respondents have not, "placed the matter at issue so as to cause forfeiture of privilege by reason of unfairness." Id. at 306. Respondents have not been denied "access to information vital to" their claims. Pritchard, 2007 WL 3232096, at *2

14

(citing Hearn, 68 F.R.D. at 581).

The deposition testimony identified by the District Court does not serve to waive the privilege. The Assistant County Attorney who was present at the deposition properly terminated the inquiries when Livingston began to elaborate on the specifics of the advice received by the Sheriff's Office, and the principal substance of the attorney-client communications was not revealed. Moreover, the fact that the deponent was not before a "decisionmaker or fact finder" when he made the statements claimed by Respondents to have triggered the waiver means that Respondents have not been placed in a disadvantaged position at trial. See In re Sims, 534 F.3d 117, 132 (2d Cir. 2008). Nothing in the record suggests that Petitioners have yet waived the privilege by "an assertion of fact to influence the decisionmaker." John Doe Co., 350 F.3d at 306.

## VII.

The Petition for Mandamus is granted. The District Court's order to produce the ten e-mails is vacated, and the District Court is directed to enter an order protecting the confidentiality of those privileged communications. Respondents shall have leave to reargue forfeiture of the privilege before the District Court should the Petitioners rely upon an advice-of-counsel or good-faith defense at trial.

15